UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LAKEISHA TERRY,                          )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )          No. 1:20-CV-104-TRM-HBG
                                         )
ANDREW M. SAUL,                          )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Judge of Plaintiff's Motion for Summary Judgment [Doc. 17],

as well as the Commissioner's Motion for Summary Judgment [Doc. 20].

Plaintiff Lakeisha Terry seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For

the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Motion for Summary

Judgment [Doc. 15] be **GRANTED IN PART** and the Commissioner's Motion for Summary

Judgment [Doc. 17] be **DENIED**.

## I.      PROCEDURAL HISTORY

On March 10, 2017, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq*. and 1381 *et seq.*, claiming a period of disability that began on February 14,

2017. [Tr. 15, 183–94]. After her applications were denied initially and upon reconsideration,

Plaintiff requested a hearing before an ALJ. [Tr. 114–15]. A hearing was held on December 13,

2018.  [Tr. 32–51].  On March 20, 2019, the ALJ found that Plaintiff was not disabled.  [Tr. 15–24].  The Appeals Council denied Plaintiff's request for review on February 19, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 21, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.  The claimant has not engaged in substantial gainful activity since February 14, 2017, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.  The claimant has the following severe impairment[s]: lupus, fibromyalgia, carpal tunnel syndrome, and osteoarthritis (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could stand and/or walk no more than 4 hours during an 8-hour workday. The claimant could not climb ladders, ropes, or scaffolds but could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

2

7. The claimant was born on April 23, 1978 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.  DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§

5

404.1520(a)(4) and -(e), 416.920(a)(4), -(e).  An RFC is the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Plaintiff's treating physician, Jon Risley, M.D. Similarly, Plaintiff challenges the ALJ's assignment of great weight to the opinions of the nonexamining state agency physicians over that of her treating physician.  Lastly, Plaintiff challenges the ALJ's failure to include any specific mental limitations in the RFC determination despite previously finding mild limitations in all functional areas.

### A.     ALJ's Treatment of Medical Opinions

#### 1.     Medical Opinions and Treatment

Plaintiff was treated at Hixson Physicians Care on July 10, 2017 upon complaints of pain and fatigue.  [Tr. 894].  Plaintiff returned and was treated on July 26, 2017 for knee trauma secondary to a fall and right shoulder injury.  [Tr. 904].  Plaintiff continued to return to Physicians Care throughout 2017 and 2018, including being referred by Dr. Risley for an MRI of her brain due to Plaintiff's "cadre of symptoms" relating to muscle disorder and fatigue.  [Tr. 920].  Plaintiff was also examined by Dr. Risley on November 17, 2017 regarding her chronic pain and fatigue. [Tr. 938].  Dr. Risley's treatment notes reflect that Plaintiff stated that she was diagnosed with

6

fibromyalgia and would return to begin initial treatment after her referral to a neurologist. [*Id.*].

Plaintiff was seen by Dr. Risley on July 20, 2018 [Tr. 969] and August 3, 2018 [Tr. 970]. Plaintiff

was also seen at Physicians Care by David Bartal, PA-C on October 16, 2018. [Tr. 1125].

Dr. Risley and Mr. Bartal subsequently completed a Medical Source Statement [Tr. 1130–

32].[1] Dr. Risley lists Plaintiff's impairments as lupus, fibromyalgia, cervical radiculopathy and

neuropathy, carpal tunnel syndrome bilaterally, cervical foot disorder, and autoimmune disorder.

[Tr. 1130]. Dr. Risley found that Plaintiff could sit for one hour, stand for thirty minutes, and walk

for thirty minutes total in an eight-hour workday. [*Id.*]. Additionally, Dr. Risley found that

Plaintiff could occasionally lift/carry up to ten pounds, but that she could never lift/carry more

than ten pounds. [*Id.*]. Dr. Risley listed multiple laboratory studies, nerve conduction velocities,

an MRI of Plaintiff's brain and spine, and physical therapy findings in support of the assessed

limitations. [*Id.*].

Next, Dr. Risley opined that Plaintiff could occasionally push/pull, but that she could never

bend or use her hands for gross or fine manipulation. [*Id.*]. Dr. Risley found that Plaintiff had a

reasonable medical need to lie down more than ten times, for up to three to four hours total, per

day. [Tr. 1131]. Dr. Risley assessed that Plaintiff needed to elevate her legs three times for one

hour. [*Id.*].[2] Similarly, Dr. Risley found that Plaintiff would need to rest multiple hours a day, as

well as that she would be expected to have the need to urinate with such frequency that it would

---

[1] Although the Medical Source Statement was signed by both Dr. Risley and Mr. Bartal, as Plaintiff challenges the ALJ's treatment of the opinion under the treating physician rule, the Court will subsequently refer to it as Dr. Risley's opinion.

[2] Dr. Risley failed to indicate whether this limitation was required daily or weekly. The ALJ stated that Dr. Risley found that Plaintiff would need to elevate her legs three times a day for an hour. [Tr. 22].

not be possible to fit this need into normal breaks in a work day. [Tr. 1131]. Lastly, Dr. Risley stated that his opinion was supported by objective evidence, including physical examinations, testing, and specialist's notes. [Tr. 1132].

In the disability decision, the ALJ noted that Dr. Risley was an attending physician with Physicians Care and reviewed the assed limitations in Dr. Risely's opinion. [Tr. 22]. However, the ALJ found "this opinion to be based more on the claimant's subjective allegations than on physical exam findings or objective imaging studies." [*Id.*]. The ALJ noted that "[t]he record shows abnormal studies related to the claimant's cervical spine, shoulder joint, and the presence of tender points," but also stated that "physical exam findings showed a full range of motion despite this pain." [*Id.*]. Therefore, the ALJ found that the assessed severe restrictions were inconsistent with the medical record and afforded little weight to Dr. Risley's opinion. [*Id.*].

However, in the disability decision, the ALJ also afforded great weight to the opinions of the nonexamining state agency physicians. [*Id.*]. George W. Hall, M.D. examined the evidence of record at the initial level of the agency's review on May 19, 2017, and opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, as well as frequently lift and/or carry up to ten pounds. [Tr. 59 and 68]. Additionally, Dr. Hall found that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday, as well as that she could sit for about six hours in an eight-hour workday. [*Id.*]. Dr. Hall did not opine any postural or manipulative limitations. [*Id.*]

Thomas Thrush, M.D. examined the evidence of record at the reconsideration level of the agency's review on October 17, 2017, and opined that Plaintiff could occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for a total of four hours; sit for about six hours in an eight-hour workday; and that she had a limited ability to

8

push and/or pull in her right lower extremities due to systemic lupus erythematosus and hip pain. [Tr. 83 and 95]. Dr. Thrush also opined that Plaintiff could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; however, he also found that Plaintiff could only occasionally climb ladders, ropes, or scaffolds. [*Id.*].

In affording the state agency physicians' opinions great weight, the ALJ found that they were well supported by the medically acceptable clinical findings, as well as consistent with other substantial evidence in the medical record. [Tr. 22].

### 2. Standards for Evaluation of Medical Opinions

With respect to Dr. Risley's opinion, under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. *Id.* As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

9

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative

10

law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

### 3. Analysis

Plaintiff contends that the ALJ's finding that Dr. Risley's opinion was inconsistent with the medical record is not supported by substantial evidence. Plaintiff cites to the longitudinal treating relationship at Physicians Care in connection her treatment for lupus, fibromyalgia, cervical radiculopathy and neuropathy, carpal tunnel syndrome bilaterally, cervical foot disorder, and autoimmune disorder. [Doc. 18 at 16]. Plaintiff cites to examination findings throughout 2017 revealing a wide variety of symptoms, including, for example, limited range of motion in the lower extremity on the right hip with pain and tenderness to palpation, edema in both ankles, and tenderness in the shoulders. [Doc. 18 at 16]. Similarly, Plaintiff claims that diagnostic testing results in 2017 [Tr. 430, 701, 785] and 2018 [Tr. 529–30, 1027, 1076] were consistent with the assessed limitations in Dr. Risley's opinion. [Doc. 18 at 17–19]. Plaintiff cites to numerous 2018 examination findings, including positive signs for fibromyalgia tender points [Tr. 524, 528], as well as shoulder pain with abduction, crepitus of the knees, and fibromyalgia tender points [Tr. 1099]. Therefore, Plaintiff maintains that the record was consistent with the assessed limitations, and "the ALJ has failed to explain why this seemingly probative evidence does not support" the opinion of her treating physician. [Doc. 18 at 19].

The Commissioner responds that substantial evidence does not support the severe restrictions set forth in Dr. Risley's opinion. [Doc. 21 at 14]. First, the Commissioner contrasts Dr. Risley's opinion that Plaintiff can only stand or walk for one hour with Plaintiff's presentation of a normal gait. [*Id.*]. For example, the Commissioner specifically notes Plaintiff's presentation

11

of a normal gait during an October 16, 2018 examination with Mr. Bartal.  *See* [Tr. 1126].  Next, the Commissioner claims that treatment notes where Plaintiff displayed full strength in all extremities, normal range of motion of the extremities, back, or neck, and no motor deficits are inconsistent with Dr. Risley's opinions that she was limited to less than sedentary work and would need to lie down throughout the day.  [Doc. 21 at 15].  Lastly, the Commissioner asserts that the ALJ properly found that Dr. Risley's opinion was based on Plaintiff's subjective allegations.  [*Id.*].

While the ALJ was not required to explain his consideration of each of the factors under the treating physician rule, he acknowledged Dr. Risley's treating relationship with Plaintiff.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).  However, the Sixth Circuit has directed that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

Although the ALJ's discussion on how Dr. Risley's opinion was inconsistent with the medical record was not extensive, he summarized how the medical record was inconsistent with the assessed severe restrictions—largely relying on physical examination findings showing a full range of motion despite cervical spine and shoulder joint pain and the presence of tender points. [Tr. 22].  Additionally, throughout the disability decision, the ALJ reviewed the pertinent treatment notes, including "some joint tenderness but . . . [a] full range of motion throughout" in records from Natalie Braggs, M.D.  [Tr. 21]; *see* [Tr. 472–82].  The ALJ similarly noted that x-rays of Plaintiff's lumbar spine and right hip on May 11, 2017 were normal.  [Tr. 21]; *see* [Tr. 465–71].  The ALJ also reviewed the medical records regarding Plaintiff's fibromyalgia, osteoarthritis related to knee pain, and arthritis; however, the ALJ summarized Plaintiff's "physical

12

examinations [displaying] some tenderness but full range of motion in the joints." [Tr. 21]. Lastly, when finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence, the ALJ acknowledged the presence of neuropathy and joint pain. [Tr. 22]. However, the ALJ distinguished that "range of motion testing has been essentially normal throughout the record," as well as that Plaintiff (despite alleging extreme fatigue) was able to prepare meals, do household chores, stop in stores, and provide care for her children. [*Id.*]. The ALJ further noted Brandon Cincere, M.D.'s mild findings in September 2018 related to Plaintiff's shoulder and that carpal tunnel findings could have been secondary to her cervical neuropathy. [*Id.*].

Therefore, the ALJ's finding that Dr. Risley's opinion was inconsistent with the medical record was supported by his discussion of Plaintiff's treatment records throughout the RFC determination. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285–86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision.").

The ALJ also properly found that Dr. Risley's opinion was based more on Plaintiff's subjective allegations. Of note, Dr. Risley failed to cite the results any specific objective imaging studies or physical examination findings which supported his opinion. "The ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of

13

symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (per curiam) ("[I]t appeared to be based primarily on Keeler's subjective complaints, and it was contradicted by other evidence in the record . . . .").

Plaintiff asserts that the ALJ's analysis of Dr. Risley's opinion fails to provide a logical bridge between the evidence and the conclusion that she is not disabled. [Doc. 18 at 19]. However, if there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence would have also supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (internal citations omitted). "The treating physician rule is not a license for reviewing courts to reweigh evidence." *Charara v. Comm'r of Soc. Sec.*, No. 17-13481, 2018 WL 5603624, at *3 (E.D. Mich. Oct. 30, 2018); *see, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The ALJ may afford less weight to a treating physician's opinion if the opinion is not well-supported by medical evidence and if the opinion is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). In the RFC determination, the ALJ properly found that Dr. Risley's opinion was inconsistent with the medical record and largely based on Plaintiff's subjective complaints. While discussing Dr. Risley's opinion, the ALJ specifically identified that the opinion was inconsistent with Plaintiff's full range of motion during examinations.

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long

14

as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Accordingly, the ALJ adequately provided good reasons for rejecting Dr. Risley's opinion, and substantial evidence supports that finding.

Plaintiff then claims that the ALJ improperly assigned great weight to the opinions of the nonexamining state agency consultants, as the ALJ "failed to note . . . that these opinions were given without the benefit of almost a year's worth of evidence." [Doc. 18 at 20]. In particular, Plaintiff notes that her fibromyalgia was first discussed in the medical record on November 17, 2017—more than a month after Dr. Thrush rendered his opinion. Therefore, Plaintiff asserts that the ALJ erred by failing to indicate that neither Dr. Thrush nor Dr. Hall considered Plaintiff's fibromyalgia diagnosis.

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR

15

96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

Plaintiff correctly states that the nonexamining state agency consultants did not review a medical record which included her fibromyalgia. However, the ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record; thus, it was appropriate to accept the opinions of the nonexamining state agency consultants. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658,

16

2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Plaintiff acknowledges that the ALJ found her fibromyalgia to be a severe impairment, and the ALJ discussed the medical record with respect to her diagnosis and treatment.

Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd*, 531 F. App'x at 728 ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). The Court finds that the ALJ appropriately considered the medical opinions of record, and that the ALJ's RFC determination is supported by substantial evidence.

### B. Mental Limitations

Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to incorporate any mental limitations into the RFC, without explanation, despite finding mild limitations in all functional areas during Step Two. Plaintiff notes that during Step Two, the ALJ found her depression and PTSD to be medically determinable,

17

but non-severe impairments. Lastly, Plaintiff alleges that the medical record supports a finding that she has mental limitations that will impact her ability to engage in sustained work activity.

The Commissioner responds that "[t]he ALJ's finding that Plaintiff's mental impairments did not cause any corresponding limitations in the residual functional capacity is supported by substantial evidence." [Doc. 21 at 22]. Additionally, the Commissioner points to the ALJ's finding that these mental impairments were non-severe.

Initially, the ALJ was not required to include mental limitations in Plaintiff's RFC solely because he found mild limitations in the paragraph B criteria for Step Two. *See Ceol v. Berryhill*, No. 3:15–CV–315–CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC."); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . .").

Accordingly, the Court's inquiry turns to whether substantial evidence supports the ALJ's determination not to include mental limitations in Plaintiff's RFC. *See, e.g.*, *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *4–6 (E.D. Tenn. July 10, 2017) (reviewing Sixth Circuit case law to find that "the Court finds none of Plaintiff's cited authority requires an ALJ's RFC determination to mimic the specific 'paragraph B' findings assessed at Step 3," and therefore the appropriate inquiry is whether substantial evidence supports the ALJ's RFC assessment). "Courts . . . have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis." *Shamsud-Din v.*

18

*Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (internal citations omitted).

The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC and the corresponding hypothetical, the ALJ need only include those limitations found to be "credible" and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The RFC determination is expressly reserved for the Commissioner, not medical experts. 20 C.F.R. § 404.1546. However, "the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Significantly, Social Security Ruling 96-8p establishes that "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

Therefore, "[i]f the ALJ discusses an impairment in the step two severity analysis, and finds the impairment to be nonsevere, he or she must still consider the impact of any non-severe limitations in the RFC analysis." *Hines v. Berryhill*, No. 6:17-CV-160-HAI, 2018 WL 2164873, at *4 (E.D. Ky. May 10, 2018); *see Patterson v. Colvin*, 5:14-CV-1470, 2015 WL 5560121, at *2 (N.D. Ohio Sept. 21, 2015) ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *7 (E.D. Mich. Feb. 27, 2015) ("The ALJ's analysis of Plaintiff's mental impairments at Step Two, while otherwise thorough, does not provide the Court with a basis to infer that Plaintiff's mental

19

impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations.") (internal citation omitted).

Alternatively, if the ALJ finds that the claimant has at least one severe impairment, then he or she may implicitly consider all impairments—severe and nonsevere—in the subsequent steps. *Scott v. Berryhill*, No. 5:16-CV-108-REW, 2017 WL 875480, at *3 (E.D. Ky. Mar. 3, 2017) (noting ALJ indicated careful consideration of entire record and all symptoms in decision and discussed nonsevere impairments during hearing). "[I]t is well settled that[ ] an ALJ can consider all the evidence without directly addressing in h[er] written decision every piece of evidence submitted by a party." *Id.* (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)). An "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Id.* (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)).

In the present case, the Court finds that remand is warranted because the ALJ failed to consider Plaintiff's non-severe mental impairments in the RFC determination. In Step Two, the ALJ noted that Plaintiff has a well-documented history of major depressive disorder and PTSD and reviewed the medical record with respect to Plaintiff's mental impairments. [Tr. 18]. However, the ALJ found that Plaintiff's "mental impairments were fairly well controlled with consistent medication and counseling causing no more than a mild limitation of function." [*Id.*]. Further, the ALJ reviewed Plaintiff's daily activities in finding no more than mild limitations in any of the paragraph B criteria. [Tr. 18–19].

"Unfortunately, the ALJ's well-reasoned analysis at step two provides no indication to the Court whether the Plaintiff's mild mental limitations had some or no effect on the Plaintiff's ability to perform light work." *Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017). The ALJ's RFC determination focuses solely on Plaintiff's physical

20

impairments and does not contain any discussion of Plaintiff's mental impairments, her treatment through medication and counseling, or the daily activities leading the ALJ to find no more than mild limitations. The ALJ's discussion of Plaintiff's daily activities centered on her ability to perform these activities despite symptoms of fatigue, rather than due to symptoms stemming from her mental impairments. *Cf. Ridge v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-109, 2019 WL 2524775, at *3 (E.D. Tenn. June 19, 2019) (finding remand was not warranted because the ALJ described at Step Four that Plaintiff had been prescribed Celexa which fairly controlled her symptoms, as well as that the ALJ found that Plaintiff did not have any mental limitations that would preclude the performance of skilled or semi-skilled work); *Fannin v. Berryhill*, No. 3:17-CV-236-DCP, 2019 WL 1434653, at *11 (E.D. Tenn. Mar. 29, 2019) (noting "remand is not warranted because the ALJ considered Plaintiff's non-severe mental impairments in her RFC analysis" by specifically noting the plaintiff's daily activities were not consistent with disabling mental impairments, and detailing the plaintiff's lack of professional mental health treatment and mild symptoms in the RFC determination); *Hines v. Berryhill*, No. 6:17-CV-160-HAI, 2018 WL 2164873, at *6 (E.D. Ky. May 10, 2018) ("The ALJ's RFC analysis focused primarily on Plaintiff's symptoms of physical impairments, *i.e.* pain in her joints, feet, hands, *etc.*, rather than her mental impairments. However, the ALJ explicitly stated that that 'Wellbutrin was reportedly helpful for depression.'").

"The ALJ's only analysis of the relevant medical evidence discussed above is during Step Two of the disability determination." *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *13 (E.D. Tenn. Mar. 11, 2021); *see, e.g., Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) ("[T]he ALJ's step-four determination regarding Winn's RFC did not consider Winn's mental impairments in a meaningful way."); *Six v. Comm'r of Soc. Sec.*, No. 2:18-CV-

21

01639, 2020 WL 746595, at *7 (S.D. Ohio Feb. 14, 2020) ("Failure to state the basis for including no limitations arising from non-severe impairments is error.").

While substantial evidence potentially supports the ALJ's decision, "[b]oth *Katona* and *Patterson* addressed the substantial evidence standard, concluding that an 'ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error' even when supported by substantial evidence." *Workman v. Berryhill*, No. CV 7:16-261-DCR, 2017 WL 3880661, at *4 (E.D. Ky. Sept. 5, 2017) (quoting *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *7 (E.D. Mich. Feb. 27, 2015)); *see also Patterson v. Colvin*, 5:14-CV-1470, 2015 WL 5560121, at *2 (N.D. Ohio Sept. 21, 2015) ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (quoting *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)) (internal quotation marks and citation omitted). Additionally, boilerplate language regarding the consideration of all impairments will not suffice. *Workman v. Berryhill*, No. 7:16-261-DCR, 2017 WL 3880661, at *2 (E.D. Ky. Sept. 5, 2017) (rejecting boilerplate language indicating ALJ considered all symptoms and remanding when ALJ failed to evaluate mental impairments in RFC analysis); *Johnson v. Colvin*, No. 7:15-039-DCR, 2016 WL 3257124, at *3 (E.D. Ky. June 13, 2016) (same).

Magistrate Judge Shirley underwent a similar analysis in *Ceol v. Berryhill*, stating that "[a]lthough the Plaintiff's anxiety is non-severe, the definition of a non-severe impairment suggests that the impairment may still impose a limitation on the Plaintiff's ability to perform light work." *Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30,

22

2017) (citing 20 C.F.R. § 404.1521(a)). "[T]he ALJ was required to consider both severe and non-severe impairments in shaping the Plaintiff's RFC and the failure to do [so] is not harmless." *Id.* "[W]hile the Commissioner makes a compelling argument that the medical evidence does not substantiate the Plaintiff's allegations that her [PTSD and major depressive disorder in the instant case] caused work-related limitations, the ALJ is tasked with weighing the evidence in the first instance, not the Court." *Id.*

Therefore, the Court finds that remand is necessary due to the ALJ's failure to discuss Plaintiff's non-several mental impairments in the RFC analysis, and consider whether Plaintiff's PTSD and major depressive disorder contributed, in any way, to an inability to perform substantial gainful work. *See Patterson*, 2015 WL 5560121, at *5 ("Under these circumstances, the Court cannot conclude that the ALJ properly considered all impairments in accordance with SSR 96–8p and remand is necessary."); *see, e.g.*, *Dixon v. Colvin*, No. CV 5: 15-269-DCR, 2016 WL 3661262, at *6–7 (E.D. Ky. July 5, 2016) ("Because there is no discussion of whether Dixon's anxiety impairment contributed to his inability to perform substantial gainful work, remand on this issue is necessary.").

## VI.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[4] that Plaintiff's Motion for Summary

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

23

Judgment [**Doc. 15**] be **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **DENIED**, and that this case be remanded for the ALJ to appropriately consider Plaintiff's mental impairments in the RFC determination.

Respectfully Submitted,

_____
H. Bruce Guyton
United States Magistrate Judge